UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TAMMIE OVITT on behalf of A.C.,

                Plaintiff,

    -v-                           1:12-CV-01522

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN    MARY MARTHA WITHINGTON, ESQ.
  NY - SARATOGA SPRINGS
Attorneys for Plaintiff
112 Spring Street, Suite 109
Saratoga Springs, NY 12866

OFFICE OF REGIONAL GENERAL COUNSEL    MARIA P. FRAGASSI
SOCIAL SECURITY ADMINISTRATION      SANTANGELO, ESQ.
  REGION II                       DAVID L. BROWN, ESQ.
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

### MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Tammie Ovitt brings this action on behalf of her minor granddaughter, A.C. ("A.C." or

"plaintiff"), pursuant to 42 U.S.C. §§ 405(g) of the Social Security Act (the "Act") seeking

review of the defendant Commissioner of Social Security's ("Commissioner" or "defendant")

decision to deny plaintiff's application for Supplemental Security Income ("SSI"). The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. BACKGROUND

A.C. filed an application for SSI on February 25, 2009, claiming a period of disability beginning on October 1, 2008. Her application was denied on July 21, 2009. At plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 11, 2010. The ALJ rendered a written decision on September 24, 2010, concluding that plaintiff was not disabled.

On October 29, 2010, A.C. appealed the ALJ's decision to the Appeals Council. On August 1, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. On October 5, 2012, plaintiff filed this action seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  See id.  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B.  Child Disability Determination—The Three-Step Evaluation Process

An individual under the age of eighteen (the "child") is disabled if he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 1382c(a)(3)(C)(I).  The ALJ follows a three-step sequential evaluation process to determine whether the child is disabled.  See 20 C.F.R. § 416.924.  At step one, the ALJ determines whether the child is engaged in substantial gainful activity.  § 416.924(b).  If the child is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the child has a medically determinable "severe" impairment or a combination of impairments that is "severe."  § 416.924(c).  If the impairment or combination of impairments is severe, then step three requires the ALJ to determine whether that severe impairment or combination of impairments meets or equals one of the conditions identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings").

Equivalence to one of the Listings can be either "medical" or "functional."  20 C.F.R. § 416.924(d).  If an impairment is found to meet or medically equal a listed disability, and the twelve-month durational requirement is satisfied, the child will be deemed disabled.  § 416.924(d)(1).  If no such impairment is found, an ALJ examines the child's "functional" equivalence to determine whether he or she "functionally" equals a disability.  20 C.F.R. § 416.926a(a).  This analysis is conducted by considering how the child performs in six "broad areas of functioning intended to capture all of what a child can or cannot do."  § 416.926a(b)(1).

These six "domains" are:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  § 416.926a(b)(1)(i)-(vi).  A finding of disability is warranted if a "marked" limitation, defined as when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities," is found in two of the listed domains.  § 416.926a(d), (e)(2)(I).  A finding

- 4 -

of disability is also warranted if an "extreme" limitation, defined as when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," is found in one of the listed domains. § 416.926a(d), (e)(3)(I). This rating is only "give[n] to the worst limitations." 20 C.F.R. § 416.926a(e)(3)(I); see also Pollard v. Halter, 377 F.3d 183, 190 (2d Cir. 2004).

## C. The ALJ's Decision

The ALJ first determined that A.C. was a "school-age child" during the relevant time period.[2] R. at 28.[3] At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since February 25, 2009, the alleged onset date. Id. At step two, the ALJ determined plaintiff's attention deficit hyperactivity disorder ("ADHD"), adjustment disorder, and oppositional defiant disorder ("ODD") were severe impairments. Id.

At step three, the ALJ found A.C. did not have an impairment or combination of impairments that met or medically equaled any of the Listings. Id. The ALJ then evaluated plaintiff's impairments in accordance with the six domains of functional equivalence. R. 28-38. He found that she had "no limitations" in: (1) acquiring and using information; (4) moving about and manipulating objects; (5) her ability to care for herself; and (6) her health and physical well-being. Id. He also found that plaintiff had "less than marked limitations" in: (2) attending and completing tasks; and (3) interacting and relating with others. Id.

Based on these findings, the ALJ determined that plaintiff did not have an impairment

_____

[2] A.C. was born on September 5, 2002. R. at 147. She was between six and eight years of age during the period under review.

[3] Citations to "R." refer to the Administrative Record.

or combination of impairments that functionally equaled any of the Listings.  Id. at 28.

Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

Id. at 38.

### D.  Plaintiff's Appeal

A.C. contends that the ALJ erred by:  (1) summarily concluding that she did not meet

or medically equal any of the Listings; (2) failing to find that she suffered "marked"

impairments in several functional domains; and (3) improperly weighing the opinion evidence

of Annette Payne, Ph.D.

### 1.  The Administrative Record

As an initial matter, A.C.'s counsel identifies two issues with the administrative record

warranting brief discussion.  First, plaintiff's amended brief contains additional evidence

generated beyond September 24, 2010, the date of the ALJ's written decision.[4]  See ECF No.

12-1 ("Appendix A"); R. at 206-11.  Plaintiff's uses this additional evidence to argue that her

impairments were more severe during the relevant time period than reflected by the ALJ's

finding, but the Commissioner argues that this evidence was not likely alter the ALJ's

disability determination.  Def.'s Mem. 20.

Where, as here, the Appeals Council denies review, "new evidence submitted to the

Appeals Council following the ALJ's decision [generally] becomes part of the administrative

record for judicial review."  Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).  Under the

regulations, the Appeals Council must consider "new and material" evidence if it relates to the

---

[4]  A.C.'s counsel claims these additional records were submitted to the Appeals Council but somehow "omitted" from the administrative record filed by defendant in connection with this appeal.  Pl.'s Mem. 9 n. 9. The administrative record also contains a handwritten statement from Ms. Ovitt as well as a note from plaintiff, both dated March 28, 2012.  R. at 206-11.

period on or before the date of the ALJ's hearing decision.  Id.  Failure to do so ordinarily

necessitates remand for reconsideration of the disability determination.  Shrack v. Astrue,

608 F. Supp. 2d 297, 302 (D. Conn. 2009) (citing Milano v. Apfel, 98 F. Supp. 2d 209, 216 (D.

Conn. 2000)).  Likewise, a case may be remanded for reconsideration based on "new and

material" evidence submitted for the first time to the district court.  Mulrain v. Comm'r of Soc.

Sec., 431 Fed. App'x. 38, 39 (2d Cir. 2011) (applying a similar "new and material" test).

New evidence is "any evidence that has not been considered previously during the

administrative process."  Shrack, 608 F. Supp. 2d at 302 (citing DelValle v. Apfel, 97 F. Supp.

2d 215, 222 (1999)).  Material evidence must be:  (1) relevant to the plaintiff's condition

during the time period for which benefits were denied; (2) probative; and (3) have a

reasonable possibility of influencing the Commissioner to decide plaintiff's application

differently.  Pollard, 377 F.3d at 193 (citation omitted); see also Jones v. Sullivan, 949 F.2d

57, 60 (2d Cir. 1991).  It also requires that good cause exist for failing to present the evidence

earlier.  Polynice v. Colvin, No. 8:12-CV-1381 (DNH/ATB), 2013 WL 6086650, at *19-20

(N.D.N.Y. Nov. 19, 2013) (adopting Report & Recommendation).

While a court should not "categorically refuse[ ] to consider" evidence simply because

it does not explicitly relate to a plaintiff's condition during the relevant time period, such

evidence must be of a type that "may disclose the severity and continuity of [existing]

impairments . . . or may identify additional impairments which could reasonably be presumed

to have been present."  Pollard, 377 F.3d at 194 (citation omitted); see also Pearson v.

Astrue, 1:10-CV-521(MAD), 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) (D'Agostino,

J.) ("Materiality requires that the new evidence not concern a later-acquired disability or the

subsequent deterioration of the previous non-disabling condition." (citation and internal

quotation marks omitted)).

Here, A.C.'s additional evidence includes school records from the 2010-2011 and 2011-2012 school years detailing an Individualized Education Plan ("IEP") that was implemented for plaintiff beginning January 30, 2012, a progress report of that plan dated March 27, 2012, testing reports from the New York State Education Department, and treatment notes from plaintiff's eye care doctor dated March 25, 2011. See Appendix A. It also contains a handwritten note from Ms. Ovitt detailing more recent developments on plaintiff's behavior, such as the fact that she now has "very angry outbursts" which are "part of the reason" that she and her younger [half] sister have since been separated. R. at 206-11.

This evidence is unquestionably "new" in the sense that it has not yet been considered previously in the administrative process. But even assuming "good cause" exists, this new evidence is simply not material to A.C's condition during the time period for which her benefits were denied. Although the records in Appendix A and Ms. Ovitt's handwritten statement arguably represent a change in the course of A.C.'s progress in her schoolwork and perhaps an aggravation of her impairment after the ALJ's decision, it does not suggest plaintiff was experiencing additional symptoms or increased impairments that were not already described in the record for the disability period at issue here.

To the contrary, the ALJ found that plaintiff was "achieving on grade level or slightly below grade level in all areas" during the time period under consideration, and this finding is corroborated by education records completed by plaintiff's teachers during the 2009-2010 school year. Id. at 186. For example, records from the first three marking periods during that year indicate that plaintiff did "a wonderful job in reading group," "participate[d] during lessons

and [was] always attentive and enthusiastic," and her "comprehension skills [were] good." Id. at 188. These records also indicated that although plaintiff "occasionally needs a reminder to stay on task and not go off topic," she "is an active participant during lessons." Id. This new evidence is not material to the time period at issue and is therefore not likely to alter the Commissioner's finding that plaintiff was not disabled between October 1, 2008, and September 24, 2010. See Pollard, 377 F.3d at 194. Accordingly, this evidence will not be considered.

Second, A.C.'s counsel notes that approximately five minutes of hearing testimony has been omitted from the administrative record and has included references to these missing portions of testimony based upon notes taken at the hearing. Pl.'s Mem. 5 n. 5. Plaintiff appears correct—the hearing transcript contains two notations that seemingly indicate missing testimony from "2:11:00 to 2:14:59" and "2[:]21:20 to 2:22:36." R. at 66, 71. Accordingly, these representations will be scrutinized in considering plaintiff's appeal.

## 2. **The Listings**

A.C. first contends the ALJ erred by concluding that her impairments did not meet or medically equal any of the Listings without explaining his rationale or referencing the appropriate criteria. Pl.'s Mem. 16. Specifically, plaintiff claims that she met Listings §§ 112.04, 112.08, and 112.11. Pl.'s Mem. 17-18. The Commissioner responds that plaintiff bears the burden of showing that she met or equaled one of the Listings and that the record "offers little evidence" that plaintiff's impairments rise to sufficient severity to do so. Def.'s Mem. 13.

A plaintiff whose impairment or combination of impairments meets or equals one of the Listings is deemed presumptively disabled and is entitled to received benefits. Hickman ex

rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2008) (Mordue, C.J.). "Where [a plaintiff's] symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the [plaintiff] failed to meet or equal the listings." F.S. v. Astrue, No. 1:10-CV-444(MAD), 2012 WL 514944, at *9 (N.D.N.Y. Feb. 15, 2012) (D'Agostino, J.) (citation omitted).

Here, the ALJ found that "[t]he [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926)." R. at 28. Although this single sentence constitutes the ALJ's entire analysis of whether plaintiff's impairments met or medically equaled one of the Listings, the ALJ's decision continued on to engage in a thorough, eleven-page elaboration of the record evidence in determining whether plaintiff's limitations were "functionally equivalent" to the Listings, as required by the three-step child disability determination. R. at 28-38.

"[T]he ALJ's failure to discuss a listing is not reversible error if substantial evidence in the record indicates that plaintiff did not satisfy the listing." F.S., 2012 WL 514944, at *14 (citation omitted). In other words, remand is only necessary if "there is significant probative evidence that a [plaintiff] meets the criteria for [one of the Listings]" such that the plaintiff is "owed a more substantive discussion of why she did not meet [a particular Listing]." Szarowicz v. Astrue, No. 11-CV-277S, 2012 WL 3095798, at *5 (W.D.N.Y. July 30, 2012) (emphasis in original) (citation omitted). Accordingly, the record evidence must be considered in light of the Listings suggested by plaintiff's counsel.

### i. **Listing 112.04**

Listing 112.04 addresses "Mood Disorders," which are characterized by a "prolonged

emotion that colors the whole psychic life, generally involving either depression or elation" and are accompanied by a full or partial manic or depressive syndrome.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.04.[5]

Here, A.C. identifies records from Todd Kuntz, Psy. D., whose "treatment goals" were to reduce and control plaintiff's depression, anxiety, and behavior problems and a March 16, 2009, treatment note with a check mark next to "suicide attempt."  R. at 310, 315.  Likewise, "treatment goals" from Lisa Braun, Psy. D. were for plaintiff to "sleep alone" and Ms. Ovitt testified that it takes plaintiff about "two hours" to fall asleep.  R. at 71, 328, 341.  Plaintiff also argues that she suffers from "marked impairments" in the areas of math and reading as well as "marked difficulties" in maintaining concentration, persistence, and pace.  Pl.'s Mem. 19.

However, none of A.C.'s various doctors have ever diagnosed her with a mood disorder.  R. at 241, 307 (Dr. Kuntz); R. at 278 (Consultative Examiner Annette Payne, Ph.D.); R. at 299 (M. Woods, M.D.); R. at 334 (Dr. Braun).  Neither plaintiff's "Child Disability Report" filed as part of her initial disability application nor the testimony adduced at the ALJ hearing involved allegations of a mood disorder.  Although Dr. Braun mentions that plaintiff's "anxiety level and mood should be closely monitored" given her family history and "borderline to clinically elevated ratings on measures of anxiety and mood," (R. at 354), these scant

---

[5]  The required level of severity for this Listing is met if both Paragraphs A and B are satisfied. Paragraph A requires medically documented persistence (either continuous or intermittent) of a major depressive syndrome that is characterized by at least five of the following, and must include either depressed or irritable mood or markedly diminished interest or pleasure:  (1) depressed or irritable mood; (2) markedly diminished interest or pleasure in almost all activities; (3) appetite or weight increase or decrease, or failure to make expected weight gains; (4) sleep disturbance; (5) psychomotor agitation or retardation; (6) fatigue or loss of energy; (7) feelings of guilt or worthlessness; (8) difficulty concentrating or thinking; (9) suicidal thoughts or acts; or (10) hallucinations, delusions or paranoid thinking.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.04.  To satisfy Paragraph B, the child must demonstrate marked impairments in two of the following:  (1) age-appropriate cognitive/communicative functioning; (2) age-appropriate social functioning; (3) age-appropriate personal functioning; or (4) marked difficulties in maintaining concentration.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.02(B)(2).

references in the record do not rise to Listings-level severity, especially in light of the fact that plaintiff's sleep patterns and focus improved while taking her medication.  R. at 175.

## ii. __Listing 112.08__

Listing 112.08 address "Personality Disorders," which are manifested by pervasive, inflexible, and maladaptive personality traits.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.08.[6]

Here, A.C. points largely to Ms. Ovitt's March 28, 2012 statement, which indicates that plaintiff has "very angry outbursts" which are "part of the reason" that she and her younger [half] sister have since been separated.  R. at 206-11.  As noted above, this evidence details developments occurring beyond the disability period at issue, and the Commissioner also correctly responds that none of plaintiff's various doctors ever diagnosed her with such a personality disorder.  R. at 241, 307 (Dr. Kuntz); R. at 278 (Dr. Payne); R. at 299 (Dr. Woods); R. at 334 (Dr. Braun).  Again, neither plaintiff's "Child Disability Report" filed as part of her initial disability application nor the testimony adduced at the ALJ hearing involved allegations of such a personality disorder that would rise to Listings-level severity, but focused on plaintiff's ADHD and associated behavior problems.

The ALJ's written decision does note that although plaintiff "fights a lot with her sister" and "has had a difficult time making friends and maintaining friendships," she does gets along well with her mother's girlfriend, has a good relationship with both of her grandparents, and has a fair relationship with her mother.  R. at 31.  The ALJ's decision also notes that plaintiff's

---

[6] This Listing requires deeply ingrained, maladaptive patterns of behavior, associated with seclusiveness or autistic thinking, pathologically inappropriate suspiciousness or hostility, oddities of thought, perception, speech, and behavior, persistent disturbances of mood or affect, pathological dependence, passivity, or aggressiveness, or intense and unstable interpersonal relationships with impulsive and exploitative behavior resulting in a finding of at least two marked impairments in age-appropriate functions of cognitive/communicative, social functioning, personal functioning, or concentration, persistence, or pace.  20 C.F.R. Pt. 404, Subpt. P App. 1 § 112.08.

thought processes were coherent and goal-directed and that there was no evidence of any hallucinations, delusions, or paranoia. Id. Plaintiff has failed to identify significant, probative evidence of the kind of "deeply ingrained, maladaptive patterns of behavior" that rise to Listings-level severity.

### iii. **Listing 112.11**

Listing 112.11 addresses "Attention Deficit Hyperactivity Disorder," which is manifested by "developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.11.[7]

Here, A.C. argues that each of the various mental health professionals who examined her diagnosed her with ADHD and that ongoing treatment records reveal that adjustments to her medication were required to combat her disruptive behaviors. Pl.'s Mem. 18. Plaintiff further argues that she is unable to follow two-step instructions and is easily frustrated if she has to wait her turn. Id.

While A.C. does correctly identify a few pieces of record evidence to underscore her ongoing struggle with ADHD, it is clear from the ALJ's written decision that he properly focused on this disorder when conducting his analysis—he recognized that this impairment was "severe." R. at 28. The record also reflects that Dr. Payne, Dr. Braun, Dr. Kuntz, and Dr. Woods all identified plaintiff as suffering from ADHD. R. at 278, 297, 307, 328. However, the Commissioner correctly notes that neither the consultative examiner nor any of plaintiff's

---

[7] The required level of severity for this Listing is met when there are medically documented findings of marked inattention; marked impulsiveness; and marked hyperactivity that result in a marked impairment in at least two of the following areas: age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; or maintaining concentration, persistence, and pace. Frye ex rel. A.O. v. Comm'r of Soc. Sec., No. 5:10-CV-98 (GTS/ATB), 2010 WL 6426346, at *7 (N.D.N.Y. Nov. 12, 2010) (Baxter, M.J.) (Report & Recommendation), adopted by, 2011 WL 1301538 (Suddaby, J.), aff'd, 485 Fed. Appx. 484 (2d Cir. 2012) (summary order).

teachers found any "marked" degrees of difficulty with inattention, impulsiveness, or hyperactivity. Rather, plaintiff's teachers noted that "with the assistance of her medication she is able to focus and work to her potential." R. at 175, 179. Other teacher notes indicated that although she "occasionally needs a reminder to stay on task," plaintiff is "always attentive and enthusiastic." R. at 188. Even Dr. Woods' treatment notes characterize plaintiff's ADHD as "stable." R. at 297, 299.

The ALJ also discussed plaintiff's age-appropriate cognitive functioning in some detail later in his written opinion, where he noted that although Ms. Ovitt testified that plaintiff "is struggling in school academically," she is a regular education student who receives extra assistance in reading and math and was able to "read[ ] well with appropriate fluency and comprehension" and "continued to work on or slightly below grade level in all areas." R. at 29-31. While plaintiff obviously suffers from ADHD, the record evidence does not support a finding her impairment met or medically equaled the challenged Listing.

Rather, the evidence suggested exactly that on which the ALJ ultimately focused—an analysis of whether plaintiff's impairments satisfied the "functional equivalence" test was required. Overall, there was substantial evidence in the ALJ's decision supporting his implicit finding that plaintiff did not have the marked inattention, impulsiveness, and hyperactivity required to meet or medically equal this Listing. Cf. Polynice, 2013 WL 6086650, at *7 (finding "substantial evidence cited in the ALJ's opinion and in the record that supports the ALJ's tacit conclusion" that no Listings applied).

The Second Circuit has recently re-affirmed that "[a]lthough . . . an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent us from

upholding them so long as we are 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" Salmini v. Comm'r of Soc. Sec., 371 Fed. Appx. 109, 112 (2d Cir. 2010) (summary order) (quoting Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).

Substantial evidence exists in the ALJ's decision and the record evidence to indicate that A.C.'s conditions did not meet or medically equal the three listed impairments suggested by her counsel. Plaintiff has not identified the kind of "significant probative evidence" in support of these Listings to necessitate a "more substantive discussion of why she did not meet [them]." Szarowicz, 2012 WL 3095798, at *5 (emphasis omitted).

Undoubtedly, the ALJ could have specifically addressed one or more of the Listings in his written decision, especially § 112.11, and provided a more direct rationale for his determination that plaintiff's impairments did not meet or medically equal any Listing before conducting his analysis of functional equivalence. However, the hearing testimony and medical evidence suggested such an analysis was appropriate, and he provided such in a detailed narrative.

"[B]ecause this is not a case 'in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record,' . . . there is no need for us to remand this case to the ALJ for clarification." Salmini, 371 Fed. Appx. at 113 (quoting Berry, 675 F.2d at 469). Accordingly, the ALJ did not err by failing to specifically discuss the challenged Listings.

### 3. **Functional Equivalence**

### i. **Acquiring and Using Information**

A.C. next contends that the ALJ erred in failing to find that she had "marked" limitations in "Acquiring and Using Information." Pl.'s Mem. 20. This domain focuses on

assessing how well the child is able to acquire and learn information and to use the information that she has learned. 20 C.F.R. § 416.926a(g). A normally functioning school-age child should be able to, among other things, "learn to read, write, and do math, and discuss history and science" and to "use these skills in academic situations to demonstrate what [they] have learned." § 416.926a(g)(2)(iv). Evidence of limited functioning in this domain includes an inability to recall information learned in class, difficulty solving math problems, and difficulty explaining oneself. § 416.926a(g)(3)(iii)-(v).

Here, A.C. argues that she has "long struggled with reading, language arts, and math" and that she is unable to perform at grade level despite "ongoing and increased special education support." Pl.'s Mem. 20.[8] However, the ALJ noted that plaintiff participated in regular education classes during the relevant time period, was able to "function well," and was achieving "on grade level or slightly below grade level in all areas." R. at 34. The record evidence confirms that although plaintiff received "special reading services" and was "reading slightly below grade level," she was using "appropriate fluency and comprehension," was "doing well in all subject areas," and had "made wonderful progress" during the relevant time period. R. at 173, 186. Therefore, it was not error for the ALJ to find that her limitations in this domain were "less than marked."

### ii. Attending and Completing Tasks

A.C. next contends that the ALJ erred in failing to find that she had "marked" limitations in "Attending and Completing Tasks." Pl.'s Mem. 21. This domain focuses on assessing how well the child can "focus and maintain . . . attention, and . . . begin, carry

---

[8] Plaintiff relies primarily on the evidence in Appendix A, such as her recently implemented IEP.

through, and finish . . . activities." 20 C.F.R. § 416.926a(h).  A normally functioning

school-age child should be able to "focus [her] attention in a variety of situations in order to

follow directions . . . and complete classroom and homework

assignments." § 416.926a(h)(2)(iv).  She should also "stay on task and in place when

appropriate" and sustain attention "well enough to participate in group sports, read by

[herself], and complete family chores."  Id.  Evidence of limited functioning in this domain

includes becoming repeatedly sidetracked or frustrated, requiring extra supervision to stay

engaged, or frequently interrupting others.  § 416.926a(h)(3)(I)-(v).

Here, A.C. argues that she is "so easily distracted that she cannot follow two-step

directions" and "will get lost in the house."  Pl.'s Mem. 22.  However, the Commissioner

correctly responds that the ALJ recognized plaintiff's ongoing diagnosis of ADHD and noted

that she is still "able to focus and attend without difficulty" when she is appropriately

medicated.  R. at 35.  Although Ms. Ovitt  testified that plaintiff "didn't really interact with her

[gymnastics] team," she was very good at the sport and enjoyed it immensely.  R. at 75.  Ms.

Ovitt also indicated that while plaintiff cannot multi-task and gets sidetracked, she puts her

own laundry away, can perform basic household chores, and is able to bathe and dress

herself.  R. at 60-64.

The ALJ's findings are confirmed by plaintiff's teachers, who felt that plaintiff is "able to

focus and work to her potential" when she is properly medicated.  R. at 175.  These records

also indicate that although she "occasionally needs a reminder to stay on task," she is "an

active participant during lessons."  R. at 187-88.  Teachers are "valuable sources of evidence

for assessing impairment severity and functioning" because of their close interaction with

students on a regular basis.  Archer ex rel. J.J.P. v. Astrue, 910 F. Supp. 2d 411, 423

(N.D.N.Y. 2012) (Young, J.) (quoting SSR 06-03P). Therefore, it was not error for the ALJ to find that her limitations in this domain were "less than marked."

### iii.  **Interacting and Relating with Others**

A.C. next contends that the ALJ erred in failing to find that she had "marked" limitations in "Interacting and Relating with Others." Pl.'s Mem. 22. This domain focuses on assessing how well the child can "initiate and sustain emotional connections with others, develop and use the language of [her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(I).

A normally functioning school-age child should be able to develop lasting friendships with her peers, "begin to understand how to work in groups," and be "able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." § 416.926a(i)(2)(iv). Evidence of limited functioning in this domain includes an absence of close friends, avoidance of new people or experiences, difficulty playing games or sports with rules, or difficulty communicating with others. § 416.926(a)(3)(ii)-(v).

Here, A.C. contends that it was error for the ALJ to "view her lack of school suspension or even her caregivers' inconsistent discipline as evidence that she does not have marked limitations" in this domain. Pl.'s Mem. 23. She argues that she is "easily distracted" and is "constantly arguing and fighting with her classmates." Pl.'s Mem. 22. She further argues that her behavior is disruptive enough for: (1) her teacher to send home a note saying she "actually" had a good day; (2) both of her mental health counselors to set treatment goals of "not hurting people, not screaming, and/or reducing her behavior

problems" and respecting personal space; and (3) her to have difficulties interacting with her peers at gymnastics. Pl.'s Mem. 22-23 (citing R. at 310, 339, 275).

While the record certainly reflects some manifestations of behavioral problems, A.C. overstates her limitations based on the record evidence. As the ALJ noted, although plaintiff prefers to play by herself, "school officials have noted this tendency [and] are making efforts to have her more actively involved" with her peers. R. at 36. A May 13, 2009, teacher questionnaire indicated that plaintiff has "no" problems interacting and relating with others. R. at 176. Likewise, other school records indicate that although plaintiff "seems to [have] some trouble at lunch and at recess as she argues with the other children," she has made "wonderful progress" and is a "wonderful young lady." R. at 186. Dr. Payne's examination indicated that while "plaintiff has had a difficult time making friends and maintaining friendships," and "fights a lot with her sister," she maintains a "good relationship" with both her grandmother and her grandfather and a "fair relationship" with her mother. Therefore, it was not error for the ALJ to find that her limitations in this domain were "less than marked."

### 4. Dr. Payne

A.C. finally contends that the ALJ erred in affording little weight to the opinion of Dr. Payne, a consultative examiner. Pl.'s Mem. 24-25. The Commissioner responds that plaintiff has failed to show Dr. Payne's assessment is inconsistent with the ALJ's finding. Def.'s Mem. 23. Both parties agree that Dr. Payne's recommendations and findings are supported by the rest of the record in this case. However, plaintiff contends that because the ALJ accorded little weight to Dr. Payne's opinion, "the decision reached in the matter is unsupportable." Pl.'s Mem. 25.

Dr. Payne, a psychologist licensed by the State of New York, performed a consultative

examiner of A.C. on June 25, 2009.  R. at 275-79.  This examination noted that plaintiff has

had some behavior problems at school, including temper tantrums, a propensity to become

easily annoyed, and can sometimes be aggressive and throw things.  R. at 275-76.  This

examination also noted that plaintiff has difficulties paying (and sustaining) attention, but that

there is not evidence of a formal thought disorder.  R. at 276.  Dr. Payne determined that

plaintiff's attention and concentration was "mildly impaired," and that she would have

"moderate" difficulties in:  attending to, following, and understanding directions; completing

age-appropriate tasks; and maintaining appropriate social behavior.  R. at 278.  Finally, Dr.

Payne determined that plaintiff "has significant difficulties" interacting with peers and adults.

Dr. Payne concluded that plaintiff suffered from ADHD and would "continue to benefit from

counseling and psychotropic medications" and an educational placement that provided

"greater structure and fewer children."  R. at 279.

　　　　A.C.'s argument must fail.  It is the ALJ's responsibility to weigh conflicting evidence in

the record and reach a determination.  Cf. Richardson v. Perales, 402 U.S. 389, 399 (1971).

The ALJ noted that Dr. Payne "only saw the claimant on a one-time basis."  R. at 33.  As

other courts have noted, "consultative exams are often brief, are generally performed without

the benefit or review of [a plaintiff's] medical history and, at best, only give a glimpse of the

[plaintiff] on a single day."  Box v. Colvin, No. 12-CV-1317(ADS), 2014 WL 997553, at *15

(E.D.N.Y. Mar. 14, 2014) (citation omitted).  In view of these realities, the ALJ was well within

his authority to weigh the consultative examiner's opinion against that of plaintiff's various

teachers when making a determination regarding the severity of plaintiff's functioning, as they

are undoubtedly "valuable sources of evidence" for making such a determination.  Archer ex

rel. J.J.P., 910 F. Supp. 2d at 423.

In any event, Dr. Payne's findings do not run contrary to the ALJ's ultimate conclusions with respect to the six domains of functional equivalence—a "moderate" limitation is circumscribed within the broader definition of a "marked" limitation, and even affording greater weight to Dr. Payne's findings would not necessarily compel a different result here. 20 C.F.R. § 416.926(a)(e)(2)(i) (defining a "marked" limitation as one that is "more than moderate" but "less than extreme."). Accordingly, the ALJ did not err in affording little weight to Dr. Payne's opinion.

## IV. <u>CONCLUSION</u>

The additional evidence included in Appendix A arguably indicates that A.C.'s ongoing struggle with ADHD may have deteriorated, but it does not alter the adverse disability determination for the time period at issue here. <u>See</u> <u>Quinlivan v. Comm'r of Soc. Sec.</u>, 08-CV-1175, 2011 WL 2413491, at *8 (N.D.N.Y. May 23, 2011) (Bianchini, M.J.) (Report & Recommendation), <u>adopted by</u>, 2011 WL 2295060 (N.D.N.Y. Jun. 10, 2011) (noting that where new evidence outside the relevant time period arguably documented a worsening impairment, the "proper remedy would be to submit a new application for benefits").

After reviewing the entire record, including the briefs, ALJ's decision, transcript of the hearing, medical and other evidence, the Commissioner's decision is not based on legal error and ample evidence exists in the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion." <u>Richardson</u>, 402 U.S. at 401.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleadings is DENIED; and

2. Defendant's motion for judgment on the pleadings is GRANTED.

The Clerk is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 7, 2014
       Utica, New York.